Filed 4/2/21  P. v. Bonilla CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GABRIEL MIGUEL BONILLA,<br><br>    Defendant and Appellant. | D077958<br><br><br>(Super. Ct. No. SCD152560) |

APPEAL from an order of the Superior Court of San Diego County, Howard H. Shore, Judge.  Affirmed.

Steven Schorr, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

In 2001, Gabriel Miguel Bonilla was convicted of first degree murder (Pen. Code,[1] § 187, subd. (a)).  Bonilla was sentenced to an indeterminate term of 25 years to life in prison.

---

[1]    All further statutory references are to the Penal Code.

Bonilla appealed and this court affirmed his conviction in an unpublished opinion. (*People v. Bonilla* (Nov. 26, 2002, D037882) [nonpub. opn.].)

In 2019, Bonilla filed a petition for resentencing under section 1170.95. The trial court appointed counsel, received briefing from the parties, reviewed the record of conviction, and this court's prior opinion. After reviewing the materials, the court found Bonilla had not demonstrated a prima facie case for relief under section 1170.95. The court found the record establishes Bonilla was the actual killer or actively participated in the killing of the victim. The court denied Bonilla's petition.

Bonilla filed a timely notice of appeal.

Appellate counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) indicating counsel has not been able to identify any arguable issues for reversal on appeal. Counsel asks the court to review the record for error as mandated by *Wende*. We offered Bonilla the opportunity to file his own brief on appeal, but he has not responded.

STATEMENT OF FACTS

The facts of the offense are set forth in our prior opinion. We will adopt the summary of those facts from appellant's brief.

On April 27, 2000, sheriff deputies found Eric H.'s (Eric) decaying body in a shallow grave in Bonilla's back yard in Imperial Beach. He had been dead for six to eight months, according to a forensic anthropologist who examined his body. The grave had been covered by a piece of plywood and an engine block. Inside the grave were pockets of hydrochloric acid or muriatic acid. Forensic investigators found bloodstains that matched Eric's DNA in Bonilla's garage, which was near the grave.

The cause of death was multiple sharp-force neck injuries resulting in loss of blood and asphyxiation. Eric had suffered at least four blows: a cut across the front of his neck; a cut on the right side of his neck; and two stab wounds on the left side of his neck. Forensic testing showed methamphetamine in Eric's liver.

Eric's sister, Michelle B., and his friend, John B., had last seen Eric the previous October at the residence of Bonilla's neighbor, where Eric was staying. Eric told John that Bonilla had offered him $60 to do some work. In early December, Michelle reported to authorities her brother was missing and began posting missing person flyers throughout Imperial Beach.

Bonilla's uncle, Charles "Sonny" McCoy, provided a tip that led sheriff deputies to Eric's body. At the time, McCoy was in jail and awaiting trial on a domestic violence charge. He had seen Eric doing yard work and odd jobs for Bonilla in exchange for drugs.

Ricardo Ortega was also in jail at the time. McCoy, who knew him because he was a long-time friend of Bonilla, originally told police he first learned Eric had been killed and buried in Bonilla's back yard while talking to Ortega in jail. McCoy subsequently told detectives and testified that he knew about the grave in Bonilla's back yard before being jailed because of hints dropped by Bonilla.

Under the prosecution's theory, Eric was killed in Bonilla's garage in mid-October 1999, on the day Bonilla had hosted a barbecue. When McCoy arrived, Eric was digging a hole near the garage so Bonilla could dispose of waste products from Bonilla's work on automobiles. Inside the garage drinking beer and tequila with Bonilla were his younger brother, Anthony, friend "Duke," and cousin, Bobby Martinez, who was also McCoy's nephew.

3

According to McCoy, Bonilla was angry with his wife and "talking about killing that bitch." When McCoy told him he could not kill his wife, Bonilla started talking about wanting to kill somebody and said he was going to do an Aztec sacrifice. McCoy, who had studied Aztec culture and religion for years, told Bonilla that the Aztecs did not sacrifice just anybody because they decided they wanted to kill; that would be murder. After calming down, Bonilla started laughing and told McCoy: "That stupid white boy outside was digging his own grave and he didn't even know it."

McCoy went outside and ordered Eric to leave. When Eric did not immediately comply, McCoy pushed him toward the gate, slapped him in the back of the head, kicked him in the "butt" and then walked him down the alley, telling him not to come back. Shortly thereafter, McCoy left and did not return that night. He never saw Eric again.

While they were both in jail in April 2000, Ortega told McCoy that he went to Bonilla's residence on the night of the homicide. Ortega said Bonilla had told him to leave: "You don't want to be involved in what's going to go down here." Ortega had replied that he was going to stay. According to McCoy, Ortega said everyone in the garage jumped on Eric. Bonilla held Eric while Martinez stabbed him. Bonilla grabbed Eric around the neck. Eric fought back. Ortega grabbed one of Eric's arms while Martinez continued to stab him.

When sheriff deputies unearthed Eric's body, they found a black and yellow screwdriver in the grave. The screwdriver could have caused the stab wounds on Eric's neck, but not the cuts on the neck.

Ray Lara, a friend of Ortega's, testified he drove Ortega to Bonilla's residence, around 3:30 p.m. or 4:00 p.m. to pick up some "dope" the day the homicide occurred. Lara remained in the car while Ortega went to the house.

4

Ortega had a black and yellow screwdriver in his back pocket. About 30 or 45 minutes later, Ortega returned to the car and said he was going to stay and help Bonilla. Ortega had a large spot of blood on his shirt.

While high on crystal methamphetamine about a week later, Ortega told Lara that he and Bonilla were in the garage with some guy who owed them too much money. Bonilla cut the guy's throat and Ortega stabbed him. Ortega and a third person dug a hole, and Bonilla threw the body in and parked a truck over it.

THE DEFENSE

Testifying on his own behalf, Bonilla denied killing or burying Eric, but admitted covering up the grave site after learning it contained Eric's body. Bonilla denied saying he killed Eric or was involved in the killing; he did not want to talk about it because he made a bad decision by covering up the grave.

Bonilla considered Eric a good friend and had no reason to kill him. Bonilla said he did not know when Eric was killed, but it was not the night of the barbecue. That night Eric had brought Bonilla a book about Aztecs, which they were discussing. McCoy took Bonilla outside and said he felt disrespected by Eric and his talking about McCoy's religion. Bonilla said he did not share McCoy's feelings.

When they returned to the garage, McCoy told Eric to "get the fuck out of here right now," and Eric ran away. There was no talk of sacrificing Eric either before or after Eric left. Eric did not dig a hole outside that night. Bonilla also testified he was aware Bobby Martinez had killed Eric but did not report it because he feared something could happen to his children. Martinez took the Aztec religion "really serious" and "worshipped" his uncle, McCoy. Martinez disappeared after the news broke about the buried body.

5

DISCUSSION

As we have noted, appellate counsel has filed a *Wende* brief and asks the court to review the record for error. To assist the court in its review, and in compliance with *Anders v. California* (1967) 386 U.S. 738 (*Anders*), counsel has identified the following possible issues that were considered in evaluating the potential merits of this appeal.

1. Can the trial court review the record of conviction—jury instructions—to determine at the second stage whether defendant is eligible for section 1170.95 relief? Does such review amount to improper fact-finding absent an adversarial hearing?

2. Was the denial of the petition prejudicial?

We have reviewed the entire record as required by *Wende* and *Anders*. We have not discovered any arguable issues for reversal on appeal. Competent counsel has represented Bonilla on this appeal.

## DISPOSITION

The order denying Bonilla's petition for resentencing under section 1170.95 is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

GUERRERO, J.

DO, J.